**Not For Publication**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

DEBRA BUCHANAN,    :
          :    Civil Action No. 04-3967 (FSH)
     Plaintiff,  :
          :    **OPINION**
vs.         :
          :    July 8, 2005
          :
JO ANNE B. BARNHART,  :
Commissioner of Social Security, :
          :
     Defendant.  :
_____:

**HOCHBERG, District Judge.**

This matter is before the Court upon Plaintiff's motion to review a final determination of the Administrative Law Judge ("ALJ"), pursuant to 42 U.S.C. § 1383 (c)(3). The Court has considered the written submissions of the parties pursuant to Fed. R. Civ. P. 78.

### I. Factual and Procedural Background

Plaintiff applied for Social Security Disability Insurance Benefits on October 3, 2001. Plaintiff claimed she had been disabled since September 18, 1997 as a result of the residuals of multiple sclerosis, which included numbness in her hands and feet, loss of vision, fatigue, instability, and headaches. She also claimed she had been disabled due to depressive disorder. Her application was denied on April 29, 2002. Plaintiff made a request for reconsideration, which was denied on January 21, 2003. On March 20, 2003, Plaintiff filed a request for a hearing. An ALJ heard the case on May 26, 2004, and issued a decision on June 25, 2004, denying Plaintiff's claim. On July 9, 2004, Plaintiff requested a review of the hearing decision by the Appeals Council. On August 9, 2004, the Appeals Council denied Plaintiff's request for

review.

Plaintiff, who was thirty-six years old when the ALJ made her decision, has completed

high school and two years of college.  Plaintiff was employed by an oil company from March

1989 until she left in September 1997, while she was pregnant.  From 1989 to 1995, Plaintiff

worked as a sales promotion coordinator for the oil company, during which time she spent most

of her days seated.  She spent much of her time on the telephone and about two or three hours per

day writing by hand.  She did not perform any lifting.  From 1995 until she left the oil company,

Plaintiff worked as a sales representative, the last year and a half of which she worked part-time.

This position also entailed handling telephone calls, about an hour per day of writing by hand,

and no significant lifting.  Prior to working for the oil company, Plaintiff held jobs in the

collections department of a trucking company and the credit office of a department store.  She

also worked as a customer service representative for a financial services company, handling

phone calls, mailing out literature, and maintaining accounting records.  She did not engage in

any significant lifting.

On July 12, 1996, Plaintiff began seeing Dr. Eliot H. Chodosh, a neurologist, after

experiencing numbness in her arms and legs.  Although the initial examination was "objectively

normal," Dr. Chodosh diagnosed her with multiple sclerosis due to her strong family history of

the disease and the abnormal results of a magnetic resonance imaging scan ("MRI") of her brain.

Dr. Chodosh saw Plaintiff in a follow-up on October 14, 1996, and reported that Plaintiff was

stable and still asymptomatic of multiple sclerosis from a neurologic viewpoint.  The doctor

noted that Plaintiff was fully functional.  On September 25, 2000, Plaintiff had another MRI of

her brain, which revealed additional lesions consistent with demyelinating disease.  On

September 29, 2000, Dr. Chodosh reported that Plaintiff had no new symptoms.

At another appointment, on November 1, 2001, Dr. Chodash noted that he had not seen Plaintiff in over a year.  The doctor noted that Plaintiff complained of a fine tremor in her hands, occasional numbness in her body, and three to four headaches per week, for which Motrin was of some benefit.  Plaintiff also complained that fatigue interfered with her daily functioning.  Upon examination, the doctor noted that Plaintiff's cranial nerves and gait were normal and sensory and cerebellar examinations were also normal.  He concluded that Plaintiff's multiple sclerosis was stable, and that the light tremor was likely due to the Paxil she was taking for anxiety.  He noted that Plaintiff's headaches seemed to be migraines and prescribed Midrin for relief.  He also prescribed Provigil for the fatigue related to her multiple sclerosis.

On November 28, 2001, a state agency physician reviewed the medical evidence of record and concluded that Plaintiff could occasionally lift fifty pounds; frequently lift twenty-five pounds; sit, stand and/or walk about six hours in an eight-hour day; and push and/or pull without limitation.  The physician also found that Plaintiff could frequently stoop and crouch, and occasionally climb, balance, and crawl.  The physician did not find any manipulative, visual, communicative, or environmental limitations.

On April 6, 2002, Dr. Michael Block conducted a mental evaluation of Plaintiff at the request of the Commissioner of Social Security.  Plaintiff informed the doctor that she had never been in a psychiatric hospital, but did take Paxil, as prescribed by her neurologist, Dr. Chodash.  She also said that her energy level and ability to concentrate had declined, and that her husband handled their finances.  The doctor observed that Plaintiff was adequately groomed and did not show any evidence of psychomotor agitation or depression.  He also noted that Plaintiff was

compliant, cooperative, and able to comprehend.  The doctor reported that Plaintiff had insight

regarding the purpose of the meeting, was coherent and goal directed, and related well.  While

she did not know the exact date, she knew the month and year.  She also demonstrated some

memory function by naming the current and previous presidents. The doctor reported that

Plaintiff demonstrated a capacity for concentration and recall, as demonstrated by her ability to

spell "flowers" forwards or backwards and recall four out of seven objects after five minutes.

She could properly translate proverbs, showed no signs of hallucinations or "flights of ideas,"

and could perform serial seven calculations.   Dr. Block noted that Plaintiff was not competent to

handle funds.

On April 16, 2002, Dr. Michael D'Anton, a state agency psychiatrist, reviewed the

medical evidence of record and concluded that Plaintiff did not have a severe affective disorder.

The doctor observed that, as a result of her mental status, Plaintiff had only mild functional

limitations on her activities of daily living, ability to maintain social functioning, and ability to

maintain concentration, persistence, and pace.  He also reported that she had no episodes of

decompensation.

On November 8, 2002, Dr. Chodosh conducted a follow-up with Plaintiff, observing that

she had been doing well, she had no specific symptoms suggesting an exacerbation of the

multiple sclerosis, and her multiple sclerosis was stable.  The doctor also reported that, other than

a fine tremor of her outstretched hands, the rest of the examination was normal.  Plaintiff

complained of occasional numbness and fatigue, which responded well to Provigil, and

headaches, which occurred about three times per week and for which the doctor prescribed

Topomax.

On January 14, 2003, Dr. Jenny Drice, a state agency neurologist, reviewed the medical evidence and concluded that Plaintiff could occasionally lift twenty pounds; frequently lift ten pounds; sit, stand and/or walk about six hours in an eight-hour workday; and push and/or pull without limitation.  Dr. Drice also opined that Plaintiff could occasionally climb, stoop, kneel, crouch, and crawl, but never balance.  The doctor did not find any manipulative or visual limitations.  The doctor noted that Plaintiff should avoid concentrated exposure to extreme cold and heat, wetness, humidity, and fumes, which could exacerbate her multiple sclerosis. However, she noted that Plaintiff could experience unlimited exposure to noise and vibration.

February 27, 2003, Dr. Chodash again examined Plaintiff and found that Plaintiff's multiple sclerosis was stable.  He noted that Plaintiff still experienced occasional numbness in her hands and limbs and had to cease taking Topomax due to resulting dizziness.  He increased her dosage of Paxil as a preventative agent for the headaches.

On May 22, 2003, Dr. Chodash noted that Plaintiff was doing well, had no specific symptoms to suggest recurrence of the multiple sclerosis, and was functioning normally.  He reported that Plaintiff was taking Copaxone, Paxil, and Provigil for the multiple sclerosis.  He noted that her headaches, which were responding well to Midrin, were only occurring once per week and that Plaintiff was not experiencing side effects from her medication.  He also reported that Plaintiff was taking Mysoline for the tremor and Plaintiff felt that it had improved.  Apart from the mild tremor with the outstretched hands, the doctor noted that the rest of the examination was normal.  He observed that the multiple sclerosis and headaches were stable.

On November 13, 2003, Plaintiff underwent another MRI of her brain, which revealed no additional plaques.

On February 5, 2004, Dr. Chodash again noted that the headaches had improved and her multiple sclerosis was stable.  Plaintiff complained that her tremor was not sufficiently controlled, so the doctor increased her dosage of Mysoline.  The doctor noted that her neurologic examination was normal.

On April 9, 2004, Dr. Chodash opined that Plaintiff could frequently lift less than ten pounds and that Plaintiff's ability to stand, walk, and sit was not affected by her impairment.  He also noted that her ability to push and/or pull with her upper extremities was limited by her tremor in her hands.  Likewise, he opined that her ability to handle, finger, and feel was limited by the tremors, but that she could still perform the manipulations frequently.  He also found that she had no limitations in seeing, hearing, and speaking.  The doctor further noted that Plaintiff should avoid exposure to extreme temperatures and humidity or wetness, but that exposure to noise, vibration, and other various environmental elements was not limited by her impairment.

In a questionnaire dated December 9, 2001 and during the May 26, 2004 hearing with the ALJ, Plaintiff reported that she lived in a two-story home with her husband, two children, and mother-in-law.  Her sleeping quarters were on the second floor and the living quarters were on the first floor.  On a typical day, she helped her older son get ready and drove him to school, and then took care of her younger son.  In the afternoon, she took her younger son to the bus for his afternoon kindergarten session.  Plaintiff also cared for her mother-in-law and performed a variety of household tasks, including grocery shopping once a week, cooking, and cleaning.  She drove her car alone and went to church once a week.  Her husband managed the household finances.

II.      **Standard for Finding of Disability**

An individual may be entitled to Social Security Benefits upon a finding of disability

demonstrating that he is unable to "engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  A disabling impairment is defined as

"an impairment that results from anatomical, physiological or psychological abnormalities which

are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42

U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D).  An individual will be deemed to be disabled only if the

impairment is so severe that he is not only unable to do his previous work, but cannot,

considering his "age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

The Commissioner of Social Security ("Commissioner") uses the following five-step

analysis to determine whether an individual is disabled:

Substantial Gainful Activity.  The Commissioner first considers whether the individual is

currently engaged in substantial gainful activity.  If there is such activity, the individual will be

found not disabled without consideration of his medical condition. 20 C.F.R. §§ 404.1520(a) and

416.920(a).

Severe Impairment.  If there is no substantial gainful activity, Plaintiff must then

demonstrate that he suffers from a severe impairment or combination of impairments that

significantly limits his ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c) and

416.920(c).

<u>Listed Impairment</u>.  If Plaintiff demonstrates a severe impairment, the Commissioner will then determine whether the impairment is listed in the regulations set forth at 20 C.F.R. § 404, Subpart P, Appendix 1, or is equal to a Listed Impairment.  If the individual has such an impairment, the Commissioner will find the individual disabled.

<u>Past Work</u>.  If the individual does not have a listed impairment, the fourth step is to determine whether, despite his impairment, the individual has the residual functional capacity to perform his past relevant work.  Residual functional capacity is defined as what the claimant can still do despite his limitations.  20 C.F.R. §§ 404.1545(a) and 416.945(a).  If he does have the capacity to perform past work, the individual will be found not disabled. 20 C.F.R.  §§ 404.1520(f) and 416.920(f).

<u>Other Work</u>.  Finally, if the individual is unable to perform work done in the past, the Commissioner then considers the individual's residual functional capacity, age, education, and past work experience to determine if he can do any other work.  If he cannot perform other work, the individual will be found disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

The five-step analysis to determine whether an individual is disabled involves shifting burdens of proof.  *Wallace v. Sec'y of Health and Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of production and persuasion through the first four steps; however, if the analysis reaches the fifth step, the Commissioner bears the burden of proving that the individual is capable of performing gainful employment other than the claimant's past relevant work and that jobs which the plaintiff can perform exist in substantial numbers in the national economy.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Ferguson v. Schweiker*, 765

F.2d 31, 37 (3d Cir. 1985).   If there is a finding of disability or non-disability at any point during

the review, the Commissioner will not review the claim further.  20 C.F.R. §§ 404.1520(a) and

416.920(a).

**III.    Standard of Review**

In accordance with 42 U.S.C. § 405(g), this Court must review the factual findings of the

ALJ to determine whether the administrative record contains substantial evidence for such

findings.  *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  A decision concerning

disability benefits must be upheld by the Court if an examination of the record reveals substantial

evidence supporting the ALJ's conclusion. 42 U.S.C. § 405(g).  Substantial evidence is more

than a mere scintilla of evidence; "[i]t means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Where evidence in the record

is susceptible to more than one rational interpretation, the Court must endorse the

Commissioner's conclusion.  *Alexander v. Shalala*, 927 F. Supp. 785, 791 (D.N.J. 1995), *aff'd*,

85 F.3d 611 (3d Cir. 1996) (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).  "The

ALJ's responsibility is to analyze all evidence and to provide adequate explanations when

disregarding portions of it." *Snee v. Sec'y of Health and Human Servs.*, 660 F. Supp. 736, 739

(D.N.J. 1987) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981); *Dobrowolski v.*

*Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Gober v. Mathews*, 574 F.2d 772, 776 (3d Cir.

1978).

**IV.    Analysis**

In reaching the determination that Plaintiff was not entitled to disability benefits, the ALJ

9

concluded that although Plaintiff suffers from a severe impairment, it has not prevented her from performing her past relevant work.  This decision was based on findings pertaining to Plaintiff's allegations regarding her limitations, medical evidence regarding her residual functional capacity, and the requirements of her previous relevant work.

The ALJ considered the evidence of record and Plaintiff's hearing testimony.  Under step one of the five-step analysis, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since September 18, 1997.  In step two, the ALJ established that Plaintiff has multiple sclerosis and that it is a severe impairment.  However, after reviewing Dr. Block's and Dr. D'Anton's evaluations, the ALJ found that Plaintiff does not have any other severe impairments, namely that she does not have a severe depressive disorder.  Thus, the ALJ did not proceed further with her analysis of Plaintiff's alleged depressive disorder.  At step three, the ALJ reviewed the medical evidence to determine whether Plaintiff's multiple sclerosis meets or equals the Listing of Impairments found in 10 C.F.R. § 404, Subpart P, Appendix 1, and determined that the abnormalities found in the medical evidence of record were not as severe as the criteria in the listings.  Specifically, the ALJ found that the medical evidence of record did not contain particular findings that are required under the pertinent listings.

Having concluded that Plaintiff does not have a listed impairment, the ALJ proceeded to the fourth step, and examined the evidence regarding Plaintiff's functional limitations to determine whether Plaintiff could perform past relevant work.  The ALJ found that the positive findings in the record suggested that Plaintiff "ha[d] a lesser degree of symptoms and a higher degree of functioning than asserted."  The ALJ concluded that, up until the March 31, 2003 expiration of Plaintiff's disability insured status, Plaintiff could lift up to ten pounds and sit,

10

stand, and walk as needed, but could not perform sustained pushing, pulling, or prolonged or frequent fine manipulative functions.  In her past relevant job as a customer service representative, Plaintiff did most of her work from her desk, requiring only short periods of standing and walking and no significant lifting.  The ALJ found no indications that this type of work required frequent pushing, pulling or fine manipulative functions.  Thus, the ALJ concluded that none of the job's requirements were precluded by Plaintiff's residual functional capacity and, despite her multiple sclerosis, she could still perform the past relevant job.

 Plaintiff argues that the ALJ failed to consider that Dr. Block diagnosed her with depressive disorder, noted that she could remember four of seven items after five minutes, and stated that Plaintiff was not capable of handling funds.  In fact, the ALJ examined Dr. Block's evaluation and other evidence before concluding that Plaintiff did not have a severe mental impairment.  An impairment is "not severe" if it only has a minimal effect on a person's physical or mental capacity to perform basic work-related activities.  20 C.F.R. § 404.1521(a).  In finding that Plaintiff does not have a severe mental impairment, the ALJ relied on Dr. Block's report that Plaintiff was an adequately groomed, cooperative and coherent person, who related well during the evaluation and did not show any signs of pyschomotor activity or depression.  The ALJ also relied on Dr. Block's opinion that Plaintiff showed adequate judgment and insight, and did not have significant difficulty with concentration or recall.  Dr. Block actually indicated that Plaintiff's ability to remember four out of seven items after five minutes demonstrated her capacities for recall and concentration.  Additionally, the ALJ did not give credence to Dr. Block's opinion that Plaintiff is not competent to handle funds because it is contradicted by Plaintiff's testimony that she regularly goes grocery shopping.

The ALJ's finding that Plaintiff did not have a severe mental impairment is supported by Dr. D'Anton's assessment.  Based on his review of the record, including Dr. Block's evaluation, Dr. D'Anton determined that Plaintiff did not have a severe mental disorder, but rather had only mild restrictions in her activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation.  Furthermore, although Dr. Chodosh gave Plaintiff a prescription for Paxil, a medication generally associated with depressive order, the ALJ noted that Dr. Chodosh does not mention any complaints or a diagnosis of a depressive disorder in any of his progress notes. According to Dr. Chodosh's reports, he originally prescribed Paxil to Plaintiff for "anxiety" and later increased the dosage for headache relief.  On May 22, 2003, Dr. Chodosh reported that Plaintiff was taking Paxil for the multiple sclerosis.

Plaintiff also argues that she is disabled under the Act because she was diagnosed with multiple sclerosis and has suffered from tremors of the hand.  For a person to be found disabled within the meaning of the Act, a disease or impairment must cause functional limitations that prevent Plaintiff from performing any substantial gainful activity.  Relying on Dr. Chodosh's April 2004 assessment,[1] in which the doctor concluded that Plaintiff had no limitations in standing, walking, or sitting, the ALJ concluded that Plaintiff could sit, stand, and walk as needed.  Based on the same April 2004 assessment, the ALJ also found that Plaintiff could lift up to ten pounds, but could not perform sustained pushing, pulling or prolonged or frequent fine manipulative functions.  Dr. Chodosh's April 2004 assessment, combined with the other medical

---

[1]  Plaintiff states that Dr. Chodosh's assessment was completed on May 26, 2004; in fact, it was completed on April 4, 2004.

12

evidence he and the state agency physicians supplied, provided substantial evidence for the ALJ's conclusion that Plaintiff could still perform past relevant work.  Thus, the ALJ reasonably concluded that the impairment did not preclude Plaintiff from performing gainful activity.

Plaintiff further argues that the ALJ should have determined how many jobs exist in the economy that Plaintiff could perform.  However, as explained in Part II, Plaintiff had the burden under step four to prove that she could not return to her past relevant work.  *Bowen,* 482 U.S. at 146 n.5.  The ALJ reasonably found that Plaintiff did not meet that burden, and thus did not proceed to consider step five.  Accordingly, the burden did not shift to the ALJ to show that jobs which the plaintiff can perform exist in substantial numbers in the national economy.  *Id.*

## V.        Conclusion

For the reasons stated in this Opinion, the ALJ's decision is supported by substantial evidence in the record and is affirmed.  An appropriate order affirming the decision will issue.

_____

/s/ Faith S. Hochberg

Hon. Faith S. Hochberg, U.S.D.J.